1  ANDRÉ BIROTTE JR.
   United States Attorney
2  ROBERT E. DUGDALE
   Assistant United States Attorney
3  Chief, Criminal Division
   MARK AVEIS (Cal. State Bar No.: 107881)
4  EDWARD E. ALON (Cal. State Bar No.: 207287)
   Assistant United States Attorneys
5  1100 United States Courthouse
   312 North Spring Street
6  Los Angeles, California 90012
   Telephone: (213) 894-4477/3825
7  Facsimile: (213) 894-6269
   E-mail: mark.aveis@usdoj.gov
8          edward.alon@usdoj.gov
   Attorneys for Plaintiff
9  United States of America

10                 UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,      ) NO. CR 10-600-R
                                   )
13               Plaintiff,        ) GOVERNMENT'S OPPOSITION TO
                                   ) DEFENDANT'S RULE 33 MOTION FOR
14  v.                             ) NEW TRIAL; MEMORANDUM OF POINTS
                                   ) AND AUTHORITIES
15  JUAN BANALES VENEGAS,          )
                                   ) Date: January 10, 2011
16               Defendant.        ) Time: 1:30 p.m.
                                   )
17                                 )
                                   )
18                                 )
                                   )
19  ─────────────────────────────  )

20          The government hereby responds to and opposes defendant

21  Juan Banales Venegas's motion for new trial (the "Motion").  In

22  summary, defendant has not shown that the interests of justice

23  warrant setting aside the jury's verdict after the testimony of

24  thirteen witnesses, hundreds of pages of documentary evidence,

25  and defendant's numerous recorded admissions.  The totality of

26  the trial record clearly shows the government's case was strong

27  and without any error that would warrant a new trial.

28

This opposition is based upon the attached Memorandum of Points and Authorities, the case files and records in this case, and any further evidence and argument that may be presented at any hearing in this matter.

DATED: December 20, 2010          Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division


_____/s/_____
MARK AVEIS
EDWARD E. ALON
Assistant United States Attorneys
Attorneys for Plaintiff
United States of America

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . ii

I.    SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    General Legal Standard for New Trial Motions . . . . 2

      B.    Defendant Has Generally Failed to Satisfy the Legal
            Standard for a New Trial . . . . . . . . . . . . . . 3

      C.    None of Defendant's Separate Grounds Warrants A
            New Trial . . . . . . . . . . . . . . . . . . . . . 4

            1.    Evidence Involving "Straw" Borrowers . . . . . . 4

            2.    Notice and Evidence Involving "Straw"
                  Borrowers . . . . . . . . . . . . . . . . . . 10

            3.    Government's Motions in Limine . . . . . . . . 12

            4.    Motion In Limine No. 9 . . . . . . . . . . . . 12

            5.    Oxnard Municipal Code Citations . . . . . . . 13

            6.    Cedar Water Shut Off . . . . . . . . . . . . . 14

            7.    Defendant's Small Claims Court Testimony
                  and Admissions . . . . . . . . . . . . . . . . 15

            8.    Leading Questions . . . . . . . . . . . . . . 15

            9.    "Severe Deficiencies" Expert . . . . . . . . . 16

            10.   Jury Instructions for Deliberation . . . . . 18

            11.   Preclusion of Hearsay Emails . . . . . . . . 19

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 20

i

1

## <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

2
**FEDERAL CASES**

3
<u>Oertle v. United States</u>,
    370 F.2d 719 (10th Cir. 1966) . . . . . . . . . . . . .   18

4

<u>United States v. A. Lanoy Alston, D.M.D., P.C.</u>,
5
    974 F.2d 1206 (9th Cir. 1992) . . . . . . . . . . . . .   3

6
<u>United States v. Andrade</u>,
    94 F.3d 9 (1st Cir. 1996) . . . . . . . . . . . . . . .   2

7

<u>United States v. Archdale</u>,
8
    229 F.3d 861 (9th Cir. 2000) . . . . . . . . . . .   15, 16

9
<u>United States v. Bailleaux</u>,
    685 F.2d 1105 (9th Cir. 1982) . . . . . . . . . . . . .   9

10

<u>United States v. Brown</u>,
11
    880 F.2d 1012 (9th Cir. 1989) . . . . . . . . . . . . .   8

12
<u>United States v. Fernandez</u>,
    839 F.2d 639 (9th Cir. 1988) . . . . . . . . . . . . .   20

13

<u>United States v. Hinkson</u>,
14
    585 F.3d 1247 (9th Cir. 2009) . . . . . . . . . . . . .   4

15
<u>United States v. Hodges</u>,
    770 F.2d 1475 (9th Cir. 1985) . . . . . . . . . . . . .   9

16

<u>United States v. Indelicato</u>,
17
    611 F.2d 376 (1st Cir. 1979) . . . . . . . . . . . .   2, 3

18
<u>United States v. Jones</u>,
    353 F.3d 816 (9th Cir. 2003) . . . . . . . . . . . . .   18

19

<u>United States v. Kellington (Kellington II)</u>,
20
    217 F.3d 1084 (9th Cir. 2000) . . . . . . . . . . . . .   2

21
<u>United States v. King</u>,
    200 F.3d 1207 (9th Cir. 1999) . . . . . . . . . . . . .   8

22

<u>United States v. Lincoln</u>,
23
    630 F.2d 1313 (8th Cir. 1980) . . . . . . . . . . .   2, 3

24
<u>United States v. Mayans</u>,
    17 F.3d 1174 (9th Cir. 1994) . . . . . . . . . . . . .   10

25

<u>United States v. Montgomery</u>,
26
    150 F.3d 983 (9th Cir. 1998) . . . . . . . . . . . . .   9

27

28
ii

## TABLE OF AUTHORITIES [CONT'D]

PAGE(S)

United States v. Ortega,
        203 F.3d 675 (9th Cir. 2000) . . . . . . . . . . . . .   20

United States v. Pimentel,
        654 F.2d 538 (9th Cir. 1981) . . . . . . . . . . . . . .  2

United States v. Sayakhom,
        186 F.3d 928 (9th Cir. 1999) . . . . . . . . . . . 8, 16

United States v. Tran,
        568 F.3d 1156 (9th Cir. 2009) . . . . . . . . . . . . .  4

United States v. Walker,
        899 F. Supp. 14 (D.D.C. 1995) . . . . . . . . . . . . .  3

**FEDERAL RULES**

Fed. R. Crim. P. 16(b)(1)(C) . . . . . . . . . . . . . . .   17

Fed. R. Crim. P. 33(a) . . . . . . . . . . . . . . . . . .  2

Fed. R. Crim. P. 52(a) . . . . . . . . . . . . . . . . . .  4

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . .  4

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . 5, 8, 10

Fed. R. Evid. 611(c) . . . . . . . . . . . . . . . . . .   16

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . 16, 18

Fed. R. Evid. 801(d)(2)(A) . . . . . . . . . . . . . . . .   20

**MISCELLANEOUS**

2 Wright, Federal Practice and Procedure,
        Criminal § 553 at 487 (1969) . . . . . . . . . . . . . .  2

MEMORANDUM OF POINTS AND AUTHORITIES

I.

SUMMARY

Defendant has moved for a new trial based upon 11 grounds. Defendant's Motion is essentially based on the same arguments in support of defendant's unsuccessful opposition to the government's motions *in limine* as well as on defendant's equally unsuccessful motions for a mistrial and motion for judgment of acquittal.

When considered under the rigorous standard for a motion for a new trial, and in light of the overwhelming evidence received at trial about which there is no claimed error, the Motion should be denied.

II.

FACTS

Defendant Juan Banales Venegas was convicted by a jury on all counts, namely, one count of bank fraud (count one) and two counts of wire fraud (counts four and five).  The evidence at trial established that defendant participated in a real estate loan fraud scheme where he falsely stated his employment, income, bank account assets, and owner-occupancy intent in order to buy three houses[1] at nearly the same time.  Defendant made his false statements in standard form loan applications and at other times during the underwriting process, including falsely verifying to at least two lender underwriters his ownership of a fictitious business called "Juan's Computer Services."  In reliance on

---

[1]  301 W. Cedar, Oxnard ("Cedar"), 1414 Astoria, Oxnard ("Astoria"), and 1119 W. Douglas, Oxnard ("Douglas").

1  defendant's false statements, the loans were approved and funded.

2  Loan defaults promptly occurred and resulted in substantial

3  losses to the victim lenders.

III.

ARGUMENT

A.   General Legal Standard for New Trial Motions

Under Fed.R.Crim.P. 33(a), "the court may vacate any judgment and grant a new trial *if the interest of justice so requires*." (Emphasis added). However, "[t]he remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996), citing United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979). Thus, the authority to grant a new trial "should be exercised sparingly and with caution . . . ." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). The Ninth Circuit is in full agreement in narrowly circumscribing what the "interest of justice so requires." See, e.g., United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (motion for new trial "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict'") (quoting 2 Wright, Federal Practice and Procedure, Criminal § 553 at 487 (1969)); See also United States v. Kellington (Kellington II), 217 F.3d 1084, 1097 (9th Cir. 2000) ("If the court concludes that . . . the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict . . .," citing Lincoln, 630 F.2d at 1319;

2

<u>United States v. A. Lanoy Alston, D.M.D., P.C.</u>, 974 F.2d 1206, 1211-12 (9th Cir. 1992) (citing <u>Indelicato</u> and <u>Lincoln</u>)).

Merely showing error does not itself warrant a new trial. A defendant moving for a new trial must not only show error, but that such error was prejudicial. Thus, a new trial may be granted only if the moving party has shown that such "error was substantial, not harmless, and that the error affected the defendant's substantial rights." <u>United States v. Walker</u>, 899 F.Supp. 14, 15 (D.D.C. 1995) (citation and internal quotation marks omitted).

B.   <u>Defendant Has Generally Failed to Satisfy the Legal Standard for a New Trial</u>

Defendant has not parsed or even introduced parts of the trial record in support of the Motion. Defendant has not even argued that the evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred. Instead, defendant has only argued that certain pretrial motion and evidentiary rulings were made in error, or that certain pieces of evidence should or should not have been received at trial, such that a new trial should be granted.

Defendant's Motion fails to satisfy the standard for a new trial as a threshold matter. Defendant has failed to show that any or all of the contested rulings warrant a new trial in the "interest of justice" or that the evidence received at trial preponderates heavily in favor of a new trial. Furthermore, even if error were shown, defendant has failed to meet the requirement that such error "was substantial, not harmless, and that the

3

error affected the defendant's substantial rights." See, e.g., United States v. Tran, 568 F.3d 1156, 1162 (9th Cir. 2009) (on appeal, evidentiary rulings are reviewed for abuse of discretion); Fed.R.Crim.P. 52(a) ("Harmless Error.  Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded . . . ."); Tran, supra (evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict); United States v. Hinkson, 585 F.3d 1247, 1267 (9th Cir. 2009) ("A district court's Rule 403 determination is subject to great deference, because the considerations arising under Rule 403 are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.") (citation and internal quotations omitted).

C.   None of Defendant's Separate Grounds Warrants A New Trial

   1.   Evidence Involving "Straw" Borrowers

Defendant's first meritless ground for a new trial is that his 5th Amendment rights to due process and a fair trial were violated where the Court permitted government witness Miriam Estrada, purportedly without notice to defendant, to testify about alleged "straw buyers, including Rodolfo Gonzalez," for property transactions not specifically charged in the indictment. Motion, 2:6-12; 4:19-21; 6:12-21.[2]

---

   [2]   Defendant raised the same argument in his motion for mistrial that the Court denied.  See November 19, 2010 Criminal Minutes [ECF Document 120]; Motion for Mistrial, pp. 6-8 [ECF Document 125].

4

1    Defendant's argument fails for several reasons.  First,
2   defendant's argument defies the plain and broad scope of the
3   charged criminal conduct as well as the relevant evidence
4   received at trial.  Next, defendant has mischaracterized the
5   proof as Rule 404(b) evidence instead of direct evidence of the
6   charged offenses.  Next, defendant has failed to show how
7   introduction of such evidence, or lack of specific notice, if
8   necessary, warrants a new trial.

9    The indictment charged a lengthy and broad fraudulent
10  conspiracy that involved numerous players and properties.  It
11  charged that defendant, Estrada, and co-defendants Rocio Partida
12  and Adela Naranjo engaged in a fraudulent scheme to assist
13  borrowers, including defendant, in buying numerous properties
14  through fraudulently obtained loans, six examples of which were
15  the basis for six counts.  The indictment alleged that
16  defendants:

17         [M]isrepresented and omitted, caused to be
           misrepresented and omitted, and aided and abetted the
18         misrepresentation and omission of, material facts in
           connection with loan applications submitted to
19         financial institutions, including that borrowers were
           self-employed owners of businesses, when, in fact,
20         borrowers were not self-employed or the businesses were
           non-existent; that borrowers earned income that, in
21         fact, they did not earn; that borrowers intended to
           occupy property sought to be purchased when, in fact,
22         borrowers did not intend to occupy said property; and
           that borrowers owned certain assets, including bank
23         accounts with large balances, when, in fact, borrowers
           did not have any bank accounts or their accounts did
24         not have large balances.

25  Indictment, 3:14-26.

26    The time period for the fraudulent scheme was several years
27  and was well-beyond the unreasonably limited period suggested by
28  defendant:

1
2
3
4
5
6
7

> Beginning on an unknown date, and continuing until at least in or about October 2007, in Ventura County, within the Central District of California, and elsewhere, . . . , together with, and aided and abetted by, others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, executed and attempted to execute a scheme to defraud Bank of America and WAMU, and other financial institutions, and to obtain monies and funds owned by and in the custody and control of said financial institutions, by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

8  Indictment, 2:14-26.

9      The indictment further alleged that the scheme involved

10 executing fraudulent loan applications to buy the several

11 properties, and not just the specific properties identified

12 therein.  The indictment charged that defendant was responsible

13 for the named properties and criminal acts associated with them

14 ". . . *among others,* . . ."  Indictment, 4:3-4 (emphasis added).

15     Furthermore, in discovery as well as in connection with

16 government's motion *in limine* no. 11, defendant was well aware

17 that the "other" alleged criminal acts included the properties

18 called "Erica Place," "Ash," and "807A."  See Government's Motion

19 *In Limine* No. 11, subpart 5.

20     As the government successfully argued in its motion *in

21 limine* no. 11, and as the evidence showed at trial, reference to

22 other properties not charged in the indictment, and to the

23 putative or "straw" buyers of those properties, was direct

24 evidence of the charged fraudulent scheme.  For example, as

25 witness Miriam Estrada testified at trial, defendant commenced

26 the scheme by soliciting Estrada to help defendant fraudulently

27 qualify to buy Cedar.  Both Estrada and Rocio Partida testified

28 that defendant at the outset told them that he intended to buy

1  Cedar because the sellers (the family of his employer, Joe
2  Garcia) were paying him cash outside of escrow to buy the
3  property.  Each further testified that defendant wanted to buy
4  more property, as yet unidentified, only where other sellers
5  would similarly pay him cash kickbacks.  During direct and cross-
6  examination, Partida referred to the kickbacks as defendant's
7  "brilliant idea."  Defense counsel embraced her testimony and
8  pursued questioning about it in an unsuccessful effort to impeach
9  Partida and by seeking to show that she, and not defendant, had
10 hatched the plan.  Furthermore, both Estrada and Partida
11 testified that defendant referred buyers to Estrada so that
12 Estrada could package fraudulent loans for those buyers.

13     Accordingly, defendant had known since his first appearance
14 in this case, where he acknowledged reading the indictment, that
15 there were several properties involved in the fraudulent scheme.[3]
16 It was both reasonable and logical to infer from the trial
17 evidence that the first step in defendant's scheme—well before
18 financing based on false statements was even sought—involved
19 finding sellers who would pay him cash kickbacks to buy their
20 property.

21     Thus, Estrada's testimony regarding "straw buyers,"
22 including Rodolfo Gonzalez (the putative buyer of the Erica Place
23 property), was part-and-parcel of the alleged fraudulent scheme.
24 Evidence that plainly and directly goes to defendant's intent and
25

26     [3]  The government hereby proffers that defendant appeared
27 in this case on June 17, 2010 and, with counsel, was advised by
   Hon. Alicia Rosenberg of his rights and acknowledged that he had
28 received and read the indictment.

knowledge of the charged offenses is direct evidence of the charged offenses and not Rule 404(b) evidence for which special notice may be required.  See United States v. King, 200 F.3d 1207, 1213-1214 (9th Cir. 1999) (government not required to allege all acts comprising execution of fraudulent scheme, including not in separate counts); United States v. Sayakhom, 186 F.3d 928, 937-938 (9th Cir. 1999) ("Evidence should not be treated as 'other crimes' evidence [under Fed.R.Evid. 404(b)] when 'the evidence concerning the [other] act and the evidence concerning the crime charged are inextricably intertwined.' [Citations omitted]").[4]

Finally, defendant has failed to cite any authority to support his sweeping accusation that he was denied a fair trial under the 5th Amendment such that he should receive a new trial. Each of defendant's cited cases is factually, if not completely, inapposite.  United States v. Brown, 880 F.2d 1012 (9th Cir. 1989) involved a shooting of a postal carrier.  The government introduced two prior firearms incidents against defendant that were not charged as part of an indictment under Rule 404(b) as proof of motive and absence of mistake.  The Ninth Circuit ruled that neither evidence of motive nor absence of mistake was relevant to prove an element of the charged offense.  Here, of course, even under a Rule 404(b) analysis, evidence of other

---

[4]   The government believes that defendant's persistent reference to such evidence as Rule 404(b) evidence is wholly erroneous.  To the extent that the Court believes that such evidence was Rule 404(b) evidence, the government requests leave to file supplemental briefing to establish that all requirements for such evidence were met nonetheless.

1  properties that defendant purchased pursuant to the charged
2  scheme was plainly relevant to proof of intent and knowledge.
3  United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982)
4  provides absolutely no guidance as it involved multiple Hobbs Act
5  extortion charges and defendant's own direct testimony about a
6  prior criminal offense that he later claimed on appeal should not
7  have been received against him.  Writing for the Court, Judge
8  Reinhardt stated that defendant had not only opened the door to
9  his prior criminal conviction but, in any event, defendant's
10  prior criminal conduct was relevant to proof of intent and was
11  not more prejudicial than probative.  Id., at 1110-12.  United
12  States v. Hodges, 770 F.2d 1475 (9th Cir. 1985), is even less
13  useful as it dealt with the admission of evidence of an extortion
14  attempt by defendant several months after an alleged bank fraud
15  conspiracy had ended.  The Court concluded that the extortion
16  attempt was simply too "attenuated" from the conspiracy such that
17  its probative value was outweighed by prejudice.  Id., at 1479-
18  80.  Here, again, there was nothing "attenuated" about
19  defendant's continuing to engage in the same charged fraudulent
20  scheme during the time period set forth in the indictment.
21  United States v. Montgomery, 150 F.3d 983 (9th Cir. 1998)
22  actually supports the government's position here.  In that case,
23  the Court upheld the trial court's allowing the government to
24  introduce defendant's prior conviction for methamphetamine
25  trafficking conspiracy where defendant was again charged with
26  methamphetamine trafficking conspiracy, on the ground that the
27  prior conviction showed defendant's unique knowledge of
28  methamphetamine trafficking.  Id., at 1000-01.  In the present

9

case, nothing as extreme as introducing a prior conviction occurred.  Again, the evidence at issue was simply introduced as direct proof of the alleged scheme.  United States v. Mayans, 17 F.3d 1174 (9th Cir. 1994), is likewise not at all on point. There, defendant was charged with narcotics trafficking in a matter that the Court called "largely circumstantial." Id., at 1177.  The government gave notice that it intended to introduce other narcotics trafficking against defendant but did not specify the nature of that activity.  Id., at 1178.  The Court was more concerned, however, that the government had not articulated for this trial court or for the defense whether it intended to introduce the other crimes evidence as direct proof or as other crimes evidence under Rule 404(b), such that the jury was prejudiced in not being instructed as to the character of the evidence.  Id., at 1183-84.  Here, no such confusion occurred and, moreover, the indictment charged, and the government presented evidence of, a fraudulent scheme as opposed to discrete, uncharged acts.

    2.  Notice and Evidence Involving "Straw" Borrowers

    Defendant's next meritless ground for a new trial is that the Court erroneously permitted government witness Rocio Partida to testify, purportedly without notice to defendant, about alleged "straw buyers" for property transactions not specifically charged in the indictment, namely the "Erica" property and "807A" property.  Motion, 2:14-21; 4:22-25; 5:1; 6:12-21.[5]  As with his

_____

    [5]  Defendant raised the same argument in his motion for mistrial that the Court denied.  See November 19, 2010 Criminal Minutes [ECF Document 120]; Motion for Mistrial, pp. 6-8 [ECF

first ground, defendant's argument ignores a plain reading of the broad scope of the criminal conduct charged in the indictment as well as the relevant evidence received at trial.  The government hereby incorporates herein by reference its response to defendant's first ground for a new trial, stated above.

Unique, however, to this ground, and fatal to defendant's argument, is the uncontroverted testimony of Rocio Partida. Partida testified that defendant solicited her to find more property where defendant could employ his "brilliant idea" of receiving a kickback after close of escrow.  Partida testified that she owned the Erica property and agreed to sell it to defendant *after* defendant solicited her and presented her with a putative or "straw" buyer.  Similarly, the evidence at trial showed that defendant presented Estrada with a straw buyer (Manuel Loubet) for the 807A property and asked Estrada to help Loubet get a loan.  Thus, as with Cedar and the two other properties specifically named in the indictment, defendant continued the charged fraudulent scheme by finding straw buyers for other properties where defendant would receive kickbacks. That evidence was, therefore, direct and relevant evidence of the charged scheme.  Defendant has failed to show how introduction of that evidence was against the "interest of justice" or that, even if it was error to admit that evidence, defendant suffered the requisite prejudice in light of the remaining, overwhelming evidence that defendant has not contested.

///

Document 125].

11

3.   Government's Motions in Limine

Defendant's third ground for a new trial is that the Court erred in granting each of the government's 11 motions *in limine*. Motion, 2:22-23.[6]  On its face, this ground is a shotgun blast that appears to suggest that the Court erred in granting the motions, rather than that there was error in the Court's actual receipt at trial of any of the evidence identified in the motions.  As to the latter, defendant has only attacked the subject matter of motions *in limine* nos. 9 and 11.

With regard to whether the Court erred in general in granting the government's motions *in limine*, defendant has failed to cite any evidence or authority that defendant should receive a new trial solely because the Court granted each or any motion *in limine*.  More specifically, defendant has not introduced any evidence or cited any authority that it would be in the interest of justice to grant a new trial because the Court granted each or any motion *in limine*.  Nonetheless, the record shows that, even if the Court should have denied each of the government's motions *in limine* (even those motions that defendant did not oppose), there remained overwhelming evidence that would not be subject to the scrutiny of a new trial analysis.  Accordingly, this ground for a new trial should be rejected.

4.   Motion *In Limine* No. 9[7]

---

[6]   Defendant's fourth ground, where defendant contends that the Court erred in granting government's motion *in limine* no. 9, is redundant of his third ground and is addressed in the government's response thereto.

[7]   See note 6.

12

1          5.    Oxnard Municipal Code Citations

2          Defendant's fifth ground is that "[t]he Court erred by

3    permitting, over defense objection, the introduction of evidence

4    of City of Oxnard Municipal Code Citations given to defendant

5    after the date of the alleged offenses in this case." (Emphasis

6    in original.)  Defendant contends that the evidence of citations

7    issued against defendant after the close of escrow for Cedar, for

8    his failure to pay the water bill for service to his tenants at

9    Cedar, was irrelevant and prejudicial.[8]

10         Defendant's relevancy objection should fail.  At issue was

11   the falsity of defendant's loan application statement where he

12   represented that he intended to occupy Cedar as his "primary

13   residence."  Furthermore, the fraudulent scheme that, by the

14   indictment, continued to October 2007, plainly encompassed how

15   defendant held the property he purchased.  Thus, defendant's

16   status as a landlord was relevant to prove his false statements

17   of residence intention.  Put another way, whether defendant

18   *actually* resided at any of the properties or how defendant

19   treated the subject properties after close of escrow is highly

20   probative of defendant's fraudulent intent.  The citations

21   introduced at trial related to lack of water and unauthorized

22   multiple resident usage for Cedar.  Photographic evidence

23   supported the citations, as did the testimony of city code

24   _____

25        [8]  Defendant has not cited to the actual trial record and
     the government does not have access at present to a trial
26   transcript.  Thus, the government does not know what specific
     objection was made, if any, to the introduction of the subject
27   evidence.  The government accepts defendant's representation that
     proper objection was made, solely for the purpose of responding
28   to defendant's Motion.

                                  13

compliance officers Blas and Silverstein who observed the code violations.  Defendant has not contested their testimony, nor has defendant contested the testimony of Estrada and Partida, both of whom testified that defendant told them that he intended to rent-out all of the properties he bought.

Defendant's objection to prejudice is equally unavailing.  Even assuming that evidence of the fact of issuance of a citation was prejudicial, defendant has not, however, sought a new trial on any ground related to the photographic evidence, to the testimony of the code compliance officers on the same subject, or to the testimony of Estrada or Partida that defendant stated that he intended to be a landlord.  Thus, even if the citation evidence were eliminated for the purpose of analyzing the trial record, the remaining record, to which no objection has been made, established the same facts.  Accordingly, defendant has not shown, and cannot show, that the interest of justice requires a new trial, including that defendant has suffered the requisite prejudice.

6.   Cedar Water Shut Off

Defendant's sixth ground is that "[t]he Court erred by permitting, over defense objection, evidence that the Cedar home purchased by defendant lacked running water and had illegal electrical and toilet hook ups."  This ground also lacks merit for the same reasons as the defendant's fifth ground above, and those arguments are incorporated here.[9]

---

[9]   Defendant raised the same argument in his motion for mistrial that the Court denied.  See November 19, 2010 Criminal Minutes [ECF Document 120]; Motion for Mistrial, pp. 5 [ECF

14

7.    <u>Defendant's Small Claims Court Testimony and Admissions</u>

Defendant's seventh ground is that "[t]he Court erred by permitting, over defense objection, the jury to hear an audiotape of a small claims court proceeding of the year 2009, two years <u>after</u> the date of the alleged offenses in this case." This ground also lacks merit for the same reasons as grounds five and six above, and those arguments are incorporated here.[10]

8.    <u>Leading Questions</u>

Defendant's eighth ground is that "[t]he Court erred in permitting the government to question the witnesses in a leading manner that assisted the testimony of the government witnesses in the government's favor." This ground lacks merit because defendant has failed to identify any specific question, whether objection was made, whether the Court overruled the objection, or how a negative ruling might, in the interest of justice, warrant a new trial. Defendant has failed to identify any such question in his memorandum of points and authorities.

A district court's decision to permit the use of leading questions is reviewed on appeal for abuse of discretion. <u>United States v. Archdale</u>, 229 F.3d 861, 865 (9th Cir. 2000) (citation omitted). A district court will be reversed on the basis of improper leading questions only if the judge's action amounted to, or contributed to, the denial of a fair trial. <u>Id</u>. "The use

_____

Document 125].

[10]   Defendant raised the same argument in his motion for mistrial that the Court denied. <u>See</u> November 19, 2010 Criminal Minutes [ECF Document 120]; Motion for Mistrial, pp. 5-6 [ECF Document 125].

of leading questions on direct examination is not always improper." Id. "Rule 611(c) of the Federal Rules of Evidence permits the use of leading questions on direct examination 'as may be necessary to develop the witness' testimony.'" Id. If defendant "failed to object contemporaneously to the leading nature of any questions put to [a witness], he has waived this issue." Id. at 866.

9. "Severe Deficiencies" Expert

Defendant's ninth ground is that "[t]he Court erred in not permitting expert evidence of defendant's 'severe deficiencies' in English." This ground also lacks merit. Defendant raised this ground in his notice of motion, but failed to reference it in his memorandum of points and authorities and provided no citation to the record. Defendant never proffered an expert and never proffered a summary of any purported expert opinion or the bases for the opinion. When asked by the Court, defendant failed to offer any basis for any opinion that defendant's claimed "severe deficiencies in English" amounted to a defense to anything.

The exclusion of expert testimony is reviewed on appeal for an abuse of discretion. Sayakhom, supra, 186 F.3d at 936 (court acted within its discretion in concluding that the testimony would not have been helpful to the jury in the resolution of defendant's guilt).

Defendant may not introduce expert opinion absent a showing that "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed.R. Evid. 702. Overlaying

16

1  the need to meet this standard, a party proffering expert

2  testimony must first meet the expert disclosure requirements of

3  Fed.R.Crim.P. 16(b)(1)(C), which requires that, upon request,

4  defendant must identify expert witnesses and provide a summary of

5  expert witness opinions, "the bases and reasons for those

6  opinions, and the witness's qualifications."

7      Here, the government requested all reciprocal discovery and

8  discovery compliance from defendant.  Defendant did not make a

9  timely or sufficient expert disclosure regarding "expert evidence

10 of defendant's 'severe deficiencies' in English" as required by

11 applicable rule.

12     Defense counsel did not proffer what "expert evidence of

13 defendant's 'severe deficiencies' in English" he sought to

14 introduce.  Instead, defense counsel indicated he did not know

15 whether he would argue or introduce evidence that the purported

16 impairment is one of a simple claimed lack of English language

17 fluency or whether the purported impairment is a mental condition

18 that compromised defendant's mental state at the time of the

19 offense conduct or during pre-and post-arrest interviews.  The

20 government requested that defense counsel provide legal authority

21 to support the introduction of evidence that lack of language

22 fluency can be introduced by expert testimony in order to prove

23 lack of criminal intent.  Defense counsel did not provide such

24 authority.  There is no evidence here that any opinion that

25 defendant suffered "severe deficiencies" in English could be

26 "(1) . . . based upon sufficient facts or data, (2) . . . is the

27 product of reliable principles and methods, and (3) the witness

28 has applied the principles and methods reliably to the facts of

17

1  the case."  Moreover, there is no evidence that any opinion about

2  "severe deficiencies" could be applied to the facts of this case,

3  both because of the strict requirements of Rule 702 and because

4  any such opinion would lack a foundation of percipient knowledge

5  and/or would require speculation.  The government pre-trial

6  stated that it did not object to reference or questioning

7  regarding whether defendant understood the English language,

8  provided such reference was based on a good faith expectation of

9  the introduction of admissible, supporting evidence, or was not

10  otherwise objectionable.

11        10.    Jury Instructions for Deliberation

12        Defendant's tenth ground is that "[t]he Court erred in not

13  permitting the jury to have a copy of the Jury Instructions in

14  the jury room during deliberations which caused confusion to the

15  jurors."  This ground also lacks merit.  Defendant only raised

16  this ground in his notice of motion, but failed to offer

17  supporting authority or cite to the record.

18        The Court has discretion whether to give a written copy of

19  the jury instructions to the jury.  United States v. Jones, 353

20  F.3d 816, 818-819 (9th Cir. 2003)(district court did not abuse

21  its discretion by refusing to issue written instructions even

22  though jurors initially expressed confusion regarding the

23  charges, given the court's oral clarification of the elements of

24  the crimes, the relative simplicity of the case, and the lack of

25  objection to the content of the oral instructions); see also

26  Oertle v. United States, 370 F.2d 719, 729 (10th Cir. 1966).

27        Even beyond the question of whether the Court erred by not

28  permitting the jury to have the instructions in the jury

deliberation room, there is absolutely no evidence whatsoever to
show that the absence of the instructions caused any confusion.
The sole evidence in the record points to the contrary.  Namely,
jury note number one questioned the location of the exhibits
related to the wire transfers for counts four and five.  As the
Court was about to convene to respond to the question, the
jurors, unsolicited and without prompting, sent juror note number
two, indicating that the jurors had located the desired evidence.
Thus, contrary to defendant's argument, the jurors were never
confused due to the absence of any instruction.  If anything,
they simply had not finished reviewing the trial evidence.

    11.  <u>Preclusion of Hearsay Emails</u>

    Defendant's eleventh ground is that "[t]he Court erred in
not permitting counsel for defendant to ask questions of the
government witnesses of e-mails that memorialized the phone calls
of defendant to the government investigators, and the Court erred
when the Court did not permit introduction into evidence of one
of the e-mails."  Defendant had sought to elicit from a law
enforcement witness, during the defense case, defendant's own
statements that the witness later memorialized in an email.[11]
The government foresaw the impermissible inquiry and asked for
and got a sidebar conference.  There, defense counsel admitted
that he intended to introduce the email through the witness as
evidence of a statement of defendant.  The Court properly

_____

[11]  Defendant again does not cite to the record, and makes
factual representations that are not in the record.  For example,
defendant's characterization of an "initial interrogation" is not
in the record.

1  precluded the inquiry and the introduction of the email as

2  inadmissible hearsay.

3       Defendant has failed to offer any authority contradicting

4  the well-established rule that a defendant's statement is

5  admissible only if offered against him; a defendant may not

6  elicit his own prior statements.  Fed. R. Evid. 801(d)(2)(A);

7  United States v. Fernandez, 839 F.2d 639 (9th Cir. 1988); United

8  States v. Ortega, 203 F.3d 675, 681-82 (9th Cir. 2000) (defendant

9  prohibited from eliciting his own exculpatory statements during

10 cross of government agent).

11                              III.

12                           CONCLUSION

13      Based on the foregoing, the government submits that

14 defendant's motion for a new trial is not supportable by either

15 fact or law, and should be denied.

16

17

18

19

20

21

22

23

24

25

26

27

28