Luis A. Carrillo, SBN 70398
LAW OFFICES OF LUIS A. CARRILLO
1525 Fair Oaks Avenue
South Pasadena, CA 91030
P: (626) 799-9375
F: (626) 799-9380
e-mail: lac4justice@yahoo.com

Attorney for Defendant
JUAN BANALES VENEGAS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE No.: CR 10-600-R |
| Plaintiff, | |
| v. | REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL |
| JUAN BANALES VENEGAS, Defendant. | |
| | Date: January 10, 2011 |
| | Time: 1:30 p.m. |
| | Courtroom of Judge Manuel Real |

COMES NOW Defendant, JUAN BANALES VENEGAS, and hereby submits the following Reply to the Government's Opposition.

DATED: December 27, 2010        _____/s/_____
                                 LUIS A. CARRILLO
                                 Attorney for Defendant
                                 JUAN BANALES VENEGAS

**A. The Court's rulings, in their totality, denied defendant the right to a fair trial and thus denied defendant rights guaranteed by the Fifth Amendment.**

As stated in Professor Laurie L. Levenson's <u>Federal Criminal Rules Handbook</u> (2009), at page 543, "**Affecting Substantial Rights** - An error affects substantial rights if it causes that type of prejudice that makes it likely that the defendant was denied a fair trial – <u>United States v. Sumlin</u>, 489 F.3d 683 (5th Cir. 2007) (admission of improper character evidence affected fairness of trial).

The cumulative effect of the Court's rulings, all in favor of the government; and all in denial of defendant's objections, denied defendant a fair trial, and thus denied defendant his right to a fair trial guaranteed by the Fifth Amendment.

**B. The government has not mentioned that the Indictment did <u>not</u> contain any reference to "straw buyers, kickbacks" and further, that the Indictment did not contain any reference to the "Erica Place" or the "807A" properties.**

As stated in pages 2 and 3 of the Indictment: "The Fraudulent Scheme

6. Beginning on an unknown date, and continuing until at least in or about October 2007, in Ventura County, within the Central District of California, and elsewhere, defendants MIRIAM SUKEY ESTRADA, ADELA NARANJO, MARIA DEL ROCIO PARTIDA, and JUAN MANUEL BANALES VENEGAS, aka "Chicken Little" ("BANALES"), together with, and aided and abetted by, others known and unknown to the Grand Jury, knowingly, and with the intent to defraud, executed and attempted to execute a scheme to defraud Bank of America and WAMU, and other financial institutions, and to obtain monies and funds owned by and in the custody and control of said financial institutions, by means of false and fraudulent pretenses, representations, and promises and the concealment of material facts.

7. The fraudulent scheme operated in substance in the following manner:

  a. Defendants ESTRADA and NARANJO operated Platinum Power for the purpose of assisting borrower-customers in obtaining loans to purchase real property. Defendants received compensation for their services in the form of loan origination fees and/or yield spread premiums.

  b. Defendant ESTRADA operated Premier Tax Service for the purpose of preparing tax returns and correspondence for customers and in support of loan applications submitted to lenders through Platinum Power.

  c. Defendant PARTIDA represented buyers and sellers of real property.

  d. Defendant BANALES purchased real property.

  e. Defendants misrepresented and omitted, caused to be misrepresented and omitted, and aided and abetted the misrepresentation and omission of, material facts in connection with loan applications submitted to financial institutions, including that borrowers were self-employed owners of businesses, when, in facts, borrowers were not self-employed or the businesses were non-existent; that borrowers earned income that, in fact, they did not earn; that borrowers intended to occupy property sought to be purchased when, in fact, borrowers did not intend to occupy said property;' and that borrowers owned certain assets, including bank accounts with large balances, when, in facts, borrowers did not have any bank accounts or their accounts did not have large balances."

The Counts against defendant were counts one, four, and five:

"COUNT ONE - Execution of loan application for submission to WAMU for the purchase of 301 W. Cedar Street, Oxnard California, that falsely stated that

borrower, defendant BANALES, was the self-employed owner of "Juan's Computer Service" and earned $12,303 per month.

COUNT FOUR - Wire transfer of approximately $475,802 from JP Morgan Chase Bank in New York, New York, to First American Title Federal Savings Bank in Santa Ana, California.

COUNT FIVE - Wire transfer of approximately $471,061 from Deutsche Bank in New York, New York, to First American Title Federal Savings Bank in Santa Ana, California."

<u>Nowhere in the Indictment is there any mention of "straw buyers" or "kickbacks" or the Erica Place property, or the "807A" property which the Court permitted the government witnesses to testify.</u>

**C. The allegations concerning the "straw buyers" and "kickbacks" are <u>not</u> inextricably intertwined with the fraudulent scheme of the Indictment.**

The 807A property, the Erica Place property, and allegations of "straw buyers" and "kickbacks" were not part of the scheme to defraud the banks mentioned in the Indictment and any alleged "actions" of defendant in connection with 807 and Erica were not "actions actually taken to execute the scheme" to defraud Bank of America, WAMU or Deutsche Bank.

The case of <u>United States of America v. Sayakhom</u> 186 F.3d 928(9th Cir. 1999) explains the meaning of "inextricably intertwined" with a fraudulent scheme to defraud. In <u>Sayakhom</u>, the defendant was charged with mail fraud and money laundering in connection with the defendant selling life insurance without the approval of the State of California.

The defendant Sayakhom objected to the introduction of evidence regarding her "Mutual Assistance Planning Servicer Program" (MAPS). The Defendant Sayakhom formed the "Asian Assistance Center" (AAC) to sell life insurance to

low-income residents even though AAC was not licensed to sell life insurance. The evidence of AAC and MAPS was part of a single criminal transaction and scheme to defraud.

In <u>Sayakhom</u> the evidence of AAC and MAPS was part of the single criminal transaction; the fraudulent scheme to defraud. But in our case, the fraudulent scheme to defraud and charged in the Indictment was related to a scheme to defraud Bank of America, WAMU, J.P. Morgan, and Deutsche Bank in specific real properties: Cedar, Astoria, and Douglas. Any evidence related to 807, Ash and Erica Place are "other crimes evidence" which was not charged in the Indictment and for which the government gave <u>no notice</u> that it would introduce this evidence.

The <u>Sayakhom</u> case helps defendant because the evidence against defendant, alleged actions of defendant in the alleged "straw buyers" and "kickbacks" were <u>not</u> part of a single criminal transaction or scheme to defraud, and were not inextricably intertwined with the fraudulent scheme to defraud Bank of America, WAMU, or Deutsche Bank in the purchase of Cedar, Astoria & Douglas.

The <u>Sayakhom</u> court held: "The MAPS evidence is not subject to exclusion under Rule 404(b) because it is inextricably intertwined with the indicted crimes. Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the [other] act and evidence concerning the crime charged are inextricably intertwined.'" <u>United States v. Soliman,</u> 813 F.2d 277, 279 (9th Cir. 1987) (citing <u>United States v. Aleman</u>, 592 F.2d 881, 885 (5th Cir. 1979)); [**15] see also <u>Ripinsky,</u> 109 F.3d at 1442 (uncharged crimes were "direct evidence of the ongoing conspiracy charged in the indictment"); <u>United States v. Vizcarra-Martinez,</u> 66 F.3d 1006, 1012 (9th Cir. 1995) ("when it is clear that particular acts of the defendant are part of, and thus inextricably intertwined with, a single

criminal transaction," admission of evidence of those acts does not violate Rule 404(b)).

The government presented testimony that Sayakhom began operating MAPS after the closure of the AAC in order to continue the unlawful sale of life insurance products. The government presented evidence that Sayakhom attempted to recruit former AAC employees to sell products for MAPS. The government introduced testimony that Sayakom attempted to convert AAC clients to the MAPS program. This evidence tends to show that Sayakhom continued her fraudulent scheme through the operation of MAPS...This evidence establishes that AAC and MAPS were part of an ongoing scheme to defraud. MAPS was simply a disguise for Sayakhom's continued sale of unauthorized insurance products after the government shut down the AAC.

<u>In our case there was nothing in the Indictment "inextricably linking" the "Erica Place" property, or the "807A" property with the charged crimes.</u>

Moreover, the case of <u>United States v. King</u> 200 F. 3d 1207 (9th Cir. 1999) provides guidance as to what are **separate** fraudulent schemes, and must be charged separately:

"This court has not yet addressed a duplicity challenge in a bank fraud case. However, in multiplicity challenges under the bank fraud statute, we have held that each "execution" of a fraudulent scheme is punishable as a separate count. See <u>United States v. Poliak</u>, 823 F.2d 371, 372 (9th Cir. 1987). In other words, the bank fraud statute "*allows* charging each execution of the scheme to defraud as a separate act. Id. (emphasis added). The question now before this court is whether an act which *can* be viewed as an independent execution of a scheme *must* be charged in a separate count.

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL**

The District of Columbia Circuit addressed this very question in <u>United States v. Bruce</u>, 319 U.S. App. D.C 245, 89 F.3d 886, 889-90 (D.C. Cir. 1996). In that case, the court rejected a duplicity challenge in a bank fraud prosecution, holding that an act which can be viewed as an independent execution of a fraudulent scheme need not be charged in a separate count. *89 F. 3d at 889*. In so holding, the court endorsed the Seventh Circuit's reasoning in <u>United States v. Hammen</u>, 977 F.2d 379 (9th Cir. 119):

> "Each execution need not give rise to a charge in the indictment. The indictment in this case sets forth the existence of a scheme and alleges the scheme was executed on at least one occasion. The allegations tending to demonstrate the existence of the scheme do appear to be allegations that, if worded and structured differently, might constitute additional executions.  This is hardly surprising; the actions that tend to prove the existence of the scheme will often be the actions actually taken to execute the scheme."
>
> Id. At 383.  We find this analysis sensible and persuasive, and we therefore hold that each execution of a scheme to defraud need not give rise to a charge in the indictment."

In our case, there was nothing to connect the allegations of fraud to the Erica Place and 807A properties other than the self-serving statements of the government witnesses who are convicted felons.

//
//
//

7

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL**

**D. The government did not charge defendant in the Indictment with any fraudulent scheme to purchase "Erica Place" or "Ash" or "807A" properties.**

The government argues at page 6:

"Furthermore, in discovery as well as in connection with government's motion *in limine* no. 11, defendant was well aware that the "other" alleged criminal acts included the properties called "Erica Place," "Ash," and "807A." See Government's Motion *In Limine* No. 11, subpart 5."

Again, there was nothing to connect the allegations of fraud to the Erica Place and 807A properties other than the self-serving statements of the government witnesses who are convicted felons.

**E. The government's motion in limine number 11 did not give notice that government witnesses would testify that Roberto Gonzalez or Manuel Loubet were "straw buyers" for defendant.**

The Government's motion in limine no. 11 did **not** give notice that Miriam Estrada would testify as to Rodolfo Gonzalez being a "straw buyer" and that defendant was associated with Rodolfo Gonzalez. Evidence of Rodolfo Gonzalez was a "loaded shotgun" that defendant was not prepared to address. Nothing in the Indictment gave notice of a fraudulent scheme of "straw buyer" and "kickbacks" and the government gave no notice of these specific uncharged bad acts of defendant and Roberto Gonzalez.

Moreover, the Rodolfo Gonzalez evidence is <u>not</u> inextricably intertwined to the <u>charged offenses</u> because there is no "linking" of alleged false income, false ownership of business, false bank account assets, or false employment, to Rodolfo Gonzalez.

"Kickbacks" and "straw buyers" were never alleged in the "charged scheme" of indictment and the government never gave notice that the government was going to introduce evidence of "straw buyers" and "kickbacks" and the "Erica Place" and "807A" properties.

**F. The Court's denial of an expert to testify of defendant's "severe impairment" in the English language also denied defendant a fair trial.**

On page 17 of the government's opposition, the government states that: Defense counsel did not proffer "what expert evidence of defendant's 'severe deficiencies' in English he sought to introduce."

This statement is factually incorrect. Both the Government and the Court asked defense counsel about a mental condition of defendant such that defendant was incompetent to stand trial. Defense counsel did inform the government and the Court of the severe deficiencies of defendant in the English language and also provided the government and the Court with a report of Dr. Mares. Dr. Mares in her examination of the defendant found that defendant was "severely impaired" in the English language. Rules 702 and 703 of the Federal Rules of Evidence would have permitted the testimony of Dr. Mares.

**G. The Court denied defense counsel full cross-examination of government witnesses about e-mails two government agents had written, and denied defendant the opportunity to introduce an e-mail written by an agent.**

Defense counsel did seek full cross-examination of two government agents about the e-mails that the two government agents wrote. Defense counsel also did seek to introduce one e-mail but was prohibited by the Court. Moreover, the e-mail that defendant sought to introduce did specifically state the government agent had "a hard time understanding" defendant. This particular e-mail could have been

admitted under Rule 803 of the Federal Rules of Evidence under subsection (1) and subsection (5). The e-mails are attached hereto as Exhibit A.

**H. The Court's repeated rulings in favor of the Government denied defendant a fair trial.**

The Court erred by permitting, over defense objection, the introduction of evidence of City of Oxnard Municipal Code Citations given to defendant after the date of the alleged offenses in this case. The Court erred by permitting, over defense objection, photographic evidence that the Cedar home purchased by defendant lacked running water and had illegal electrical and toilet hook ups. (The photographs permitted by the Court are attached hereto as Exhibit B). The Court erred by permitting, over defense objection, the jury to hear an audiotape of a small claims court proceeding of the year 2009, two years after the date of the alleged offenses in this case. Moreover, the Court erred in permitting the government to question the witnesses in a leading manner that assisted the testimony of the government witnesses in the government's favor.

The cumulative effect of the Court's rulings in favor of the Government affected the Constitutional and substantial rights of defendant in that the rulings caused the jury to be prejudiced against defendant, making it likely that defendant was denied a fair trial. Furthermore, these errors by the Court affected the fairness and integrity of the judicial proceedings.

## CONCLUSION

For the reasons stated hereinabove, the conviction of defendant should be set aside and this Honorable Court should grant defendant a new trial.

Respectfully submitted,

Dated: December 27, 2010					LUIS A. CARRILLO

							_____/s/_____

							Attorney for Defendant

							JUAN BANALES VENEGAS

REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S RULE 33 MOTION FOR NEW TRIAL